**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | **No. 21-MJ-236** |
| | **:** | |
| **LUKE RUSSELL COFFEE,** | **:** | |
| **Defendant.** | **:** | |

**GOVERNMENT'S MEMORANDUM IN**
**SUPPORT OF PRE-TRIAL DETENTION**

Luke Coffee used a crutch to attack law enforcement officers as they guarded a Lower Terrace entrance to the U.S. Capitol during the insurrection on January 6, 2021.  Coffee's assault, captured on video, included charging at these United States Capitol Police and Metropolitan Police Department Officers using the crutch and, in at least one instance, using the crutch in an attempt to strike the upper chest/head area of one of the officers.  He did so as a member of the mob attacking the Capitol during its constitutional responsibility of confirming the results of the 2020 Presidential Election. U.S. Const. Amend XII.  This gravely serious conduct constituted an act of domestic terrorism, *see* 18 U.S.C. § 2331(5), and resulted in the government charging Coffee with multiple felonies, including a crime of violence with a dangerous weapon.  The defendant should be detained pending trial pursuant to 18 U.S.C. §§ 3142(f)(1)(E) and (f)(2)(A).

I.     **FACTUAL BACKGROUND**

A.     **Coffee Traveled from Texas to the District of Columbia to Participate in the Insurrection**

On January 5, 2021, the defendant was interviewed on a program called "Conspiracy Castle" about, among other things, his plans for his trip to the District of Columbia.  *See*

1

"Conspiracy Castle Live with Actor & Producer Luke Coffee on his Journey to DC," available at https://www.youtube.com/watch?v=p8KlrJh2Wz4.   Quoting Steve Bannon, Coffee offered that "all hell is gonna break loose tomorrow."  *See id.* at 38:30 minutes.  He also shared that he expected to see "people hang themselves literally" and that 200,000 indictments would be unsealed.  *See id.* at 41:49 minutes.

**B.     Coffee's Role in the January 6, 2021 Attack on the U.S. Capitol**

On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. The U.S. Capitol is secured 24 hours a day by U.S. Capitol Police.  Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification are allowed access inside the U.S. Capitol. On January 6, 2021, the exterior plaza of the U.S. Capitol was also closed to members of the public. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

As the proceedings continued in both the House and the Senate, and with Vice President Mike Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

At such time, the certification proceedings still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.

Shortly thereafter, at approximately 2:20 p.m. members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

During that time, Coffee was among a group of insurrectionists attempting to gain entry to the Capitol through an entrance on the Lower Terrace.  Numerous officers with the United States Capitol Police ("USCP") and Metropolitan Police Department ("MPD") guarded that entrance and sought to protect themselves as well as the Capitol building and its occupants.

As reflected on videos capturing the events, at approximately 4:28 p.m., Coffee picked up a crutch and raised it over his head, turning first to face the crowd of rioters and then turning to face the law enforcement officers at the entrance.  *See* Figure 1 (screen shot from a video posted to YouTube).

Figure 1.



Coffee then lowered the crutch to waist height and proceeded to push the crutch into the line of MPD and USCP officers, making contact with at least one officer. *See* Figures 2-5 (screen shots from police officer body cam video).

Figure 2



Figure 3.



Figure 4.



Figure 5.



In the midst of Coffee's attack, one MPD officer appears to grab Coffee in an attempt to push Coffee back. After being forced back from the officers, Coffee charged at the officers while still holding the crutch. This time Coffee held the crutch in a more aggressive manner, positioning it directly towards the officer's upper chest/head area. *See* Figures 6-8 (screen shots from police officer body cam video).

Figure 6.



Figure 7.



Figure 8.



### C.   Coffee's Conduct Following the January 6, 2021 Attack

Coffee returned to his home state of Texas following the January 6, 2021 attack on the U.S. Capitol.   On January 11 and 14, 2021, a close family member of Coffee's sent him messages through a social media platform.   In one exchange, the family member asked, "For the Q storm does that mean you will arm yourself and war? . . . Did the Feds already talk to you?  Or rumor?" Coffee responded on January 15, "Yap to both."  In another exchange, on January 14, the family member asked, "Can you tell us where you will be thru Tuesday??"  Coffee responded the next day, "Nope can't tell you where."  On January 15, Coffee sent a message to the same close family member saying, "Don't worry.  I'm being taken care of.  I'm hidden."

On January 15, 2021, Coffee was again interviewed on the "Conspiracy Castle" program. *See* "Conspiracy Castle Friday Night Lights with Fellow Texan Luke Coffee," available at https://www.youtube.com/watch?v=L9n_eFKKgoo.   During this roughly three-hour interview, Coffee identified himself in a video of the attack on the Capitol (at 24:50) and stated:

- he is "part of this Q mission" (at 1:02:50);

- "It's game over bitches and you're going to be fucked if you don't come forward. You're going to be killed." (at 1:50:00);

- "I was ready to die, I thought I'd die [at the Capitol]" (at 2:09:00); and

- "When I was walking up there. . . I was completely at peace. . . God gave me supernatural peace. . . This is a battle. . . When I was walking up there, bro, it's like the heavens opened up and there were these strips of paper with verses on it and each verse was encouraging me to walk forward. I'm not a crazy person. It was like the spirit of 1776. . . We were going to bust in there." (at 3:15:00)

On January 17, 2021, Coffee was interviewed yet again on the "Conspiracy Castle" program. *See* "Conspiracy Castle Sunday Stream with Luke Coffee," available at https://www.youtube.com/watch?v=YXqLtkDsnyM. During this interview, Coffee spoke both of his attack on the Capitol and the FBI's investigation of him:

- Referring to the MPD officer who was viciously attacked by the mob mere feet from where Coffee stood, he said the officer looked like a "CPR dummy" (at 46:35);

- Coffee refused to say where he was. "I'm not going to tell you where I am at. . . I'm ready to go to jail. Take me to jail. . . I'm not even going to fight. I was going to have a shotgun and they were going to take me down" (at 1:45:00);

- "I was ready to die. . . These were not regular cops. . . I did charge them, just pushed them back." (at 1:14:45); and

- When speaking of the FBI poster featuring Coffee's picture and seeking information about him and other Capitol rioters, Coffee proclaimed that it was a "privilege" to be on that poster. (at 1:51:05).

In late January, Coffee granted an in-person interview to a reporter with *Texas Monthly*. In an article published after Coffee's arrest, Coffee is reported to have resided for several weeks at an undisclosed resort in Texas where he was, in the reporter's words, "hiding from the law." *See* Ex. A.  Coffee posed for a picture for the article, and the person who owned the resort indicated that he "offered to shelter [Coffee] at a discount for as long as he wanted."  *See* Ex. A.

On February 25, 2021, Coffee was arrested in the Northern District of Texas and his apartment and truck in Dallas were searched by the FBI.  Among other things, agents recovered what appears to be the same camouflage jacket Coffee was seen wearing in the videos depicting his attack.  The jacket still smelled of pepper spray.  Agents also obtained evidence that Coffee was on the verge of moving out of his apartment, including that agents observed clothes laid out around the apartment as if about to be packed.

## II.      Procedural History

On February 16, 2021, the United States filed a complaint and a magistrate judge issued an arrest warranted based on alleged violations of 18 U.S.C. §§ 111(b) (Assault of Federal Law Enforcement Officer with Dangerous Weapon), 231(a)(3) (Interference with Law Enforcement Officer During Civil Disorder), 1512(c)(2) (Obstruction of an Official Proceeding), and 1752(a)(1) and (2) (Unlawful Entry on Restricted Grounds), and 40 U.S.C. § 5104(e)(1) (Disorderly Conduct on Capitol Grounds).  On February 25, 2021, Coffee was arrested in the Northern District of Texas and he had initial appearance in that District the next day.  That court held a preliminary and detention hearing on March 8, 2021, after which the magistrate judge found the government had established probable cause.  The court ordered the defendant released on certain conditions but stayed that order pending appeal.

**ARGUMENT**

In assessing whether pretrial detention or release is warranted, the judicial officer must "take into account the available information concerning" the following four factors: (1) "the nature and circumstances of the offense charged, including whether the offense is a crime of violence"; (2) "the weight of the evidence against the person"; (3) "the history and characteristics of the person, including . . . the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearances at court proceedings"; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g).   In consideration of these factors the government respectfully submits that there are no conditions or combinations of conditions which can effectively ensure the safety of any other person and the community and the defendant's appearance at future proceedings.

**A.      Nature and Circumstances of the Offenses Charged**

During the course of the violent siege of the U.S. Capitol on January 6, 2021, over 100 law enforcement officers reported being assaulted or injured by the violent mob while attempting to protect the U.S. Capitol and the individuals inside of the building. These assaults occurred both inside of the Capitol, as well as on the steps outside of the Capitol and the grounds of the Capitol, where the enormous mob included numerous individuals with weapons, bulletproof vests, and pepper spray who were targeting the officers protecting the Capitol. Additionally, the violent crowd encouraged others in the crowd to work together to overwhelm law enforcement and gain unlawful entry into the U.S. Capitol.

As a result of this conduct, defendant is charged with several serious felony offenses and,

if convicted, the defendant faces a substantial period of incarceration.  One of the felony charges he faces, of Assault of a Federal Law Enforcement Officer with a Dangerous Weapon, in violation of 18 U.S.C. § 111(b), poses an inherent risk of danger to the community as a "crime of violence." *See* 18 U.S.C. § 3142(g)(1); *id.* § 3156(a)(4) (defining a "crime of violence" under the BRA as "an offense that has an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another").  That offense alone carries a maximum penalty of 20 years' incarceration.  This considerable punishment gives the defendant "a substantial incentive to flee the United States." *United States v. Vo*, 978 F. Supp. 2d 41, 43 (D.D.C. 2013) (finding detention appropriate for defendant facing stiff penalties for bribery and visa fraud); *United States v. Ali*, 793 F. Supp. 2d 386, 391 (D.D.C. 2011) (denying release pending trial and noting lengthy sentence that would accompany conviction was factor that increased flight risk of defendant).

The defendant's conduct constituted an act of domestic terrorism, a fact that should be considered by this Court in assessing the nature and circumstances of the offenses.  Domestic terrorism is defined as:

> activities that--
> (A) involve acts dangerous to human life that are a violation of the criminal laws of the United States or of any State;
> (B) appear to be intended--
>     (i) to intimidate or coerce a civilian population;
>     (ii) to influence the policy of a government by intimidation or coercion; or
>     (iii) to affect the conduct of a government by mass destruction, assassination, or kidnapping; and
> (C) occur primarily within the territorial jurisdiction of the United States.

18 U.S.C. § 2331(5).

Coffee's conduct involved an attack on the United States Congress while it was in session to perform its constitutionally mandated duty of counting the votes cast by the electoral college

that determine who shall be chosen to be the President of the United States.  The defendant's attack on the Capitol included the use of a dangerous weapon to assault law enforcement officers who, grossly outnumbered, bravely sought to protect the Capitol and its occupants.  The defendant's conduct meets the statutory definition of domestic terrorism since his actions (a) involved act dangerous to human life that violated federal criminal law, (b) were undertaken to influence the policy of the government, and (c) and occurred in the territorial jurisdiction of the United States— in fact, at the seat of our government.

The nature of Coffee's offenses reflect a clear disregard for the law and efforts to injure or otherwise impede law enforcement, both of which indicate that he poses a danger to the community.  The nature and circumstances of the offenses weigh heavily in favor of detention.

**B.      The Weight of the Evidence Against the Defendant**

The second factor to be considered, the weight of the evidence, also clearly weighs in favor of detention.  As noted above, the defendant was observed on U.S. Capitol surveillance cameras, social media videos, and police officer body cam video.  The defendant can be seen on these videos picking up a crutch and then using it to attack several police officers.  Coffee was identified in the various pictures and videos capturing the events by, among others, a Special Agent with the FBI who was a college classmate of Coffee's.  Coffee also admitted that he had been at the Capitol on January 6, 2021 to an FBI agent who interviewed him, a close family member with whom he exchanged messages on a social media platform, and to at least one reporter. *See* Ex. A.  As described above, in a series of interviews on "Conspiracy Castle," Coffee openly discussed his presence at the Capitol during the insurrection and even admitted that he "charged" at police officers.  Finally, during a search of the defendant's home on the day he was arrested, law enforcement recovered what appears to be the same camouflage jacket Coffee was seen wearing

in the videos depicting his attack.  The jacket still smelled of pepper spray.  The evidence against the defendant is overwhelming and this factor weighs heavily in favor of detention.

### C.        Coffee's History and Characteristics

This offense constitutes the defendant's first known arrest, a fact that is to the defendant's credit when considering this factor.  But his conduct before, during, and after the insurrection evidences that he is both a danger to the community and a serious risk of flight.  To begin with, his attack on law enforcement officers with a dangerous weapon shows the lengths to which he is willing to go to disrupt the peaceful transfer of power in the United States and his complete disdain for law enforcement.  *See* United States v. Dodge, 846 F. Supp. 181, 185 (D. Conn. 1994) (detention proper where the evidence suggested a "significant disrespect for lawful authority"). Moreover, in the over two months since the attack, the defendant has not exhibited any remorse for his actions.  He has given many hours of interviews in which he has discussed his role in the attack and repeated the various ways in which he felt his participation in the mob attack was justified. If anything, these interviews show that the defendant is *proud* of his conduct, not remorseful.  On one of the worst days in American history, the defendant was a central player, a role he relished.

Although Coffee turned himself in once his lawyer was contacted by the FBI and told of the arrest warrant, the defendant evidenced that he was hiding from law enforcement for at least several weeks.  The *Texas Monthly* article published after his arrest revealed that Coffee had a cheap place to stay well out of Dallas.  When contacted by the FBI, the defendant refused to say where he was.  When asked by a close family member, the defendant refused to say where he was. His "fixed" address is a home owned by Coffee's parents, as Coffee was moving out of his apartment the day he was arrested.

14

**D.     The Nature and Seriousness of the Danger to Any Person or the Community that Would be Posed by his Release.**

The nature and seriousness of the danger to the community posed by the defendant's release, also weighs heavily in favor of detention.  The defendant armed himself with a crutch and assaulted law enforcement officers with the intent to unlawfully enter the U.S. Capitol and stop the functioning of our government as it met to certify election results.  The danger the defendant caused by participating in the attack of this violent mob cannot be overstated.  His assault also evidenced a disregard for the safety of others and for the rule of law.  In the time since the insurrection, the defendant has not expressed remorse for his actions or disclaimed the beliefs which motivated his unlawful actions in the first place.  In fact, he has told even his mother of his readiness to arm himself for war.  He therefore remains a danger to the community.

Respectfully submitted,

CHANNING PHILLIPS
ACTING UNITED STATES ATTORNEY

By: _____/s/_____
    Peter Lallas
    Assistant United States Attorney
    N.Y. Bar Number 4290623
    United States Attorney's Office
    555 Fourth Street, N.W.
    Washington, D.C.  20530
    Telephone: (202) 252-6879
    Email: peter.lallas@usdoj.gov